Robinson, J.
The application of the plaintiff in error for a termination of the guardianship was made under Section 11010, General Code, which reads:
“When the probate judge is satisfied that an idiot, imbecile, or lunatic, or a person as to whom guardianship has been granted as such, is restored to *324 reason, or that letters of guardianship have been improperly issued, he shall make an entry upon the journal that such guardianship terminate.”
It will he observed that this section authorizes the probate judge not only to terminate a guardianship, when the person over whom guardianship has been granted is restored to reason, but also to terminate the guardianship when letters of guardianship have been improperly issued, and, since all power of the probate court with reference to the appointment of guardians is conferred by statute, the question as to this proceeding being a collateral attack upon the judgment-appointing the guardian is disposed of by the express provision of Section 11010, supra, giving to the probate court jurisdiction to terminate a guardianship where “letters of guardianship have been improperly issued.”
The Court of Appeals in its review upon error of the application to terminate the guardianship found that the judgment of the court of common pleas upon the question of the mental incompetency of ’Valentine Schafer was against the weight of the evidence, and affirmatively found “the plaintiff in error to be competent mentally,” and thereupon affirmed the judgment of the court of common pleas upon the ground that he was competent mentally, but incompetent physically, to care for his property. The petition in error here, in the light of the journal entry of the Court of Appeals, brings to this court the questions:
(1) Whether Section 10989, General Code, authorizes the probate court to appoint a guardian for a person who is mentally competent, but physically incompetent.
*325 (2) If it does so authorize the appointment of a guardian for a person mentally competent, and physically incompetent, has the Legislature the power to so provide?
Section 10989 reads, in part:
“Upon satisfactory proof that a person resident of the county, or having legal settlement in any township thereof, is an idiot or imbecile, or lunatic, or an incompetent by reason of advanced age or mental or physical disability or infirmity, the probate court shall appoint a guardian for such person.”
In the discharge of its obligation to so interpret each enactment of the Legislature as to make it conform to the provisions of the Constitutions of the state and federal government, this court has endeavored to construe Section 10989, General Code, so as to qualify the word “incompetent” by the word “mentally”; but by reason of the fact that the Legislature has made its own classification of persons subject to guardianship under this provision, and, in addition to idiots, imbeciles, and lunatics, has made a general classification under the comprehensive term “incompetent,” and has furnished its. own definition of the word “incompetent,” by declaring such to be a person “incompetent by reason of advanced age,” “incompetent by reason of * * * mental * * * disability or infirmity,” “incompetent by reason of * * * physical disability or infirmity,” and has distinguished between mental incompetency and physical incompetency, and made each a ground for the appointment of a guardian, this court cannot by any process, other than by an arbitrary disregard of the language of the section *326 itself, arrive a,t the conclusion that the Legislature did not intend to make a person suffering from a physical disability alone an incompetent within the provisions of this section. The majority of the court being of that opinion, the court is confronted with the second question propounded above.
The practice of the state exercising a paternal supervision over the property of persons mentally incompetent to exercise such supervision for themselves has existed in some form or other since the foundation of government among men. Without going into a history of the various forms of guardianship which have prevailed in the various jurisdictions of the world, it is sufficient to say that, in so far as we have been able to discover, the guardianship of property has always and everywhere been confined to the guardianship of the property of persons mentally incapable of managing such property—incapable either by reason of infancy or by reason of lack or impairment of intellect; the theory being that the acquisition of property constitutes an act of the will, that a person acquires property either by the exercise of his own will to dominate exclusively an animate or inanimate object, which is under the domination of no person, and thereby subjects such object to his will, and therefore makes such object his property, or, by the exercise of his will in conjunction with the exercise of the will of the person who already dominates such object, receives a transfer of such domination from the person who theretofore exercised such domination, and that, where a person either by reason of his infancy has not attained the power to exercise his will, or by reason of a defect from birth never has and never can have *327 the will to exercise, or by reason of accident or disease has lost the power to exercise his will, the state, in the exercise of its sovereignty, supplies to such through the medium of a guardian the mental attribute which such person has not yet attained, will never have, or has for the time being lost.
Blackstone has described property as the “sole and despotic domination which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe.” (Blackstone’s Commentaries, book 2, ch. 1, p. 2.) While this definition, in the light of present-day situations, would necessarily have to be rather liberally construed, it states the essential characteristic of property. Woerner in his American Law of Administration (2d Ed.), Section 1, states:
“My property is that which is mine. That only is mine which I acquire, hold, and dispose of by my will. It is my will which determines the acquisition of a thing by me, whether originally, by reducing to possession, and thus making my property that which was no one’s property before, or by contract, by which a thing becomes mine through the concurrence of my will with that of its former owner.”
And in Section 4 he states:
“Property, then, is the realization of the free will of a person, the external sphere of his freedom. As such, it partakes of, and is clothed with, the dignity and inviolability of the person. The things which constitute property can have no rights, for they have no will; and will alone, or the person in which it has its abode and vehicle, can be the subject of right and of its correlative, duty. The law recognizes and *328 deals with property only in so far as it recognizes and deals with the will of the owner, realized or externalized therein.”
In Section 3 he states:
“Alienability is of the essence of property; an infringement of my right or power to alienate my property is therefore a limitation upon my free will, and to that extent a violation of my personal liberty, because my free will finds realization in property. The infraction of my personal freedom is precisely the same if a limitation is put upon my power to alienate property as if I were prevented from acquiring, or from holding or using it. The limitation would in either case deprive me of my power to contract, and thus destroy my liberty.”
It thus follows that the function of the state in exercising a guardianship over the property of one of its defective subjects, whether defective by reason of age, birth, accident, or disease, arises out of the fact that such defective is lacking in the power to exercise his will, which we have come to term “mental capacity to manage,” and not out of lack of physical ability to care for, control, develop, and utilize.
The existence of the power to exercise the will, the mental capacity to manage, implies the ability to employ or secure some one physically able to perform the tasks set, and if the power to exercise the will, the mental capacity to manage exists, that function can be performed as well by a person physically incapacitated as by a guardian, for it is not contemplated by Section 10989, General Code, that the guardian shall perform the physical labor necessary for the utilization and enjoyment of the property, but *329 that out of the proceeds of the estate of the ward such physical labor shall be employed; and, since a ward “competent mentally, but physically incompetent,” possesses the mental capacity to manage, and therefore the mental capacity to employ or secure some one possessing physical capacity to carry out his will, all reason for the substitution for his mental capacity to manage of the mental capacity of a guardian to manage disappears.
Section 1, Article I, of the Constitution of Ohio, guarantees to all persons within its borders:
“Certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property.”
There being no sound reason for the provision of Section 10989, General Code, that makes physical disability or infirmity a ground for the appointment of a guardian of the property of a person mentally competent, but physically incompetent, the provision is an unwarranted abridgment of the liberty of such person, and an unwarranted abridgment of his right to acquire, possess and protect property, and therefore in violation of Section 1, Article I, of the Constitution.

Judgment reversed,

Marshall, C. J., Wanamaker, Jones, Matthias, Day and Allen, JJ., concur.